### Stanifer v. Commonwealth.

(Decided May 4, 1926.)

#### Appeal from Perry Circuit Court.

1. Criminal Law—In Murder Prosecution Against Two Joint Defendants, Admission of Testimony as to Conversation of Deceased and Sister with One Defendant in Absence of Other Held Not Error,

Under Instruction that it was Not Evidence Against Defendant, who was Absent.—In murder prosecution against two joint defendants, admission of testimony as to conversation of deceased and his sister with one defendant, in the absence of the other, about the shooting held not error, under instruction that it was not evidence against the defendant, who was absent.

2. Homicide—Oral Testimony as to Dying Declaration Held Competent, though Magistrate had Reduced Dying Declaration to Writing, and Writing was Not Produced.—Oral testimony as to dying declaration held competent, though dying declaration had been reduced to writing, and the writing was not produced.

3. Criminal Law—In Murder Prosecution Against Two Joint Defendants, Admission of Testimony that One Defendant, in Absence of the Other, Stated that the Other Shot Deceased and He could Not Keep Him from it, Held Not Error, Under Instruction that it was Not Competent Against Absent Defendant.—In prosecution against two joint defendants, admission of testimony that one defendant, in the absence of the other, stated that the other defendant shot deceased and he could not keep him from it was not error, under instruction that the testimony was not competent against the defendant who was absent, as it cannot be presumed jury disregarded instruction.

4. Homicide.—In murder prosecution, testimony that witnesses saw defendant with pistol in hand two hours before shooting held competent.

5. Homicide—In Murder Prosecution, Admission of Testimony that Defendant Stated Two Hours Before the Shooting that he had had Trouble with a Man, Not the Deceased, Held Error, but Not Reversible Error.—In murder prosecution, admission of testimony that defendant had stated two hours before the shooting that he had had a little trouble with a man, who was not the deceased, held error, but not reversible error.

6. Homicile.—Evidence held sufficient to sustain conviction of manslaughter, where deceased was shot with a pistol.

JESSE MORGAN, F. J. EVERSOLE and J. T. BOWLING for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The grand jury of Perry county returned an indictment against James Stanifer and his son, Fred Stanifer, for the murder of Robert Morris by shooting him with a pistol, it being charged in the indictment in different counts that each of them did the shooting and that the other was present aiding and assisting. On the trial of

the case the jury returned a verdict finding James Stanifer not guilty. They also returned a verdict finding Fred Stanifer guilty of manslaughter and fixing his punishment at confinement in the state penitentiary for a period of fifteen years. Fred Stanifer's motion for a new trial having been overruled he appeals.

The grounds relied on for reversal are rulings of the court in the admission of testimony. On the day of the homicide James Stanifer and Fred Stanifer were at the home of Robert Morris and about 3:30 p. m. were in the barn across the road from the dwelling house. They were all drinking. About 4:00 p. m. Emaline Sandlin, who was a sister of Robert Morris and lived in the house with him, heard a pistol shot over in the barn; she looked out from the porch and didn't hear anybody or see anything and went back in the room. A few minutes later she looked out and saw Morris coming out of the barn and James Stanifer walking along behind him. He walked about ten steps, Stanifer then took hold of him and put his arms around him. Morris staggered up against him and then fell to the ground; he was shot in the back and died in about an hour. She was permitted to testify as follows:

"I said, 'Jim, what is the matter,' and he said, 'Bob has shot himself,' and I said 'No, I guess not for he didn't have anything to shoot himself with,' and he said, 'No, Fred Stanifer done it accidentally,' and about that time he fell on the ground and he walked up and shook him and said, 'Bob, wasn't this done accidentally?' and he said, 'No, you know it wasn't, and you know he done it on purpose;' I said come on away and don't talk to him about it."

To this evidence the defendants objected and the court told the jury that what was there said was not evidence against Fred Stanifer but might be considered against James Stanifer. This ruling was proper, for the indictment was against both; they were tried jointly and what took place between her and James Stanifer was competent against him, although not against Fred Stanifer, who had left soon after the pistol was fired and was not present when this statement was made. She also was allowed to testify that her brother made to her the following dying declaration:

"He said Fred Stanifer walked up and pulled his pistol and shot him, and didn't even give him time to ask him what it was done for."

This evidence was competent, as has been often held, although it was shown that a magistrate had reduced to writing the dying declaration of the deceased and the writing was not produced. Nichols v. Com., 196 Ky. 706; Taylor v. Com., 210 Ky. 796.

For the same reason there was no substantial error in the ruling of the court on the testimony of the other witnesses as to the dying declaration of the deceased. The Commonwealth introduced Lee Baker, who testified that fifteen or twenty minutes after the shooting James Stanifer told him that "Fred shot him and he could not keep him from it." The court told the jury that this was not competent against Fred Stanifer but they might receive it as evidence insofar as in their judgment it threw any light as against James Stanifer. There was similar testimony by two other witnesses, but as the defendants were tried jointly there was no other course for the court to follow, and it cannot be presumed that the jury disregarded the admonition of the court.

There was some evidence that the deceased said that Fred shot him for nothing. But the court admonished the jury they should not consider the deceased's statement that Fred Stanifer had sold him the whiskey.

The court allowed Ezekiel Hoskins to testify that about two hours before the shooting he saw Fred Stanifer with a pistol in his hands going down the railroad, and that Fred then stated to him that he had had a little trouble with a man named Winston. The fact that Fred had the pistol was competent evidence, but the trouble with Winston had no connection with the homicide and should not have been admitted. However, this could have had no reasonable effect upon the result of the trial, for it threw no light upon the homicide.

James Stanifer was not introduced on the trial as a witness. Fred testified that while they were in the barn Morris proposed to buy his pistol and he handed the pistol to Morris, muzzle foremost; Morris walked on crutches and got up on his crutches to get the pistol; that as he reached for the pistol he lost his balance and fell and Fred put up his hand to catch him and as he did this Morris' crutch struck the pistol and caused it to go off, and he was thus shot accidentally.

The court cannot say that the verdict of the jury finding against this version of the homicide is palpably against the evidence, for it is hard to understand how Morris could have been shot in the back, the ball ranging

downward, if this was true, and Fred's own conduct after the homicide is inconsistent with this view of the matter, for he did not assist Morris to his house after he was shot, as it would be natural that he should have done in case of an accident to his friend, but on the contrary, immediately left and went where he could not be found and then went to Toledo, Ohio, and stayed there until after his father had been arrested for the offense and put in jail. On the whole case the court finds that no substantial right of the defendant was prejudiced on the trial.

Judgment affirmed.