DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Timothy L. Brown appeals his conviction of operating a motor vehicle while under the influence of alcohol, a violation of R.C. 4511.19(A)(1), which was entered by the Hocking County Municipal Court. Appellant argues that he was prejudiced by several inappropriate statements made by the prosecuting attorney, that the trial court committed reversible error by denying appellant's request for a mistrial, and that the trial court also erred by admitting certain evidence and allowing opinion testimony.
 {¶ 2} For the following reasons, we disagree with appellant and affirm the judgment of the trial court.
 Statement of the Facts and Proceedings Below I. The Accident and Arrest {¶ 3} On October 8, 2000, at approximately 2:50 p.m., Defendant-Appellant Timothy L. Brown was driving on State Route 56 near Laurelville, Ohio, and became involved in an automobile accident. Members of the Ohio State Highway Patrol arrived on the scene to investigate and determined that appellant had lost control of his vehicle while attempting to maneuver around a sharp turn in the road, went left of center, and struck an oncoming vehicle driven by Harry Mullins.
 {¶ 4} Some of the investigators on the scene suspected that appellant may have been under the influence of alcohol, noting bloodshot eyes, slurred speech, an odor of alcohol about his person, and an unbalanced gait. The Horizontal Gaze Nystagmus (HGN) field-sobriety test was administered at the scene, and appellant admitted to having consumed a "few beers" prior to the accident.
 {¶ 5} Appellant was transferred to the Logan Police Department where he consented to take a blood-alcohol-concentration breath test, which was administered more than two hours after appellant's last operation of a motor vehicle. The results of appellant's breath test on the BAC Datamaster were .239 grams of alcohol per 210 liters of breath.
 {¶ 6} Appellant was cited for operating a motor vehicle while under the influence of alcohol (OMVI), a violation of R.C. 4511.19(A)(1); operating a motor vehicle with a prohibited concentration, a violation of R.C. 4511.19(A)(3); and driving left of center, a violation of R.C.4511.30.
 II. The Trial Court Proceedings {¶ 7} Appellant was arraigned on the specified charges and pled not guilty.
 {¶ 8} Appellant filed a motion to suppress all evidence seized, based on a lack of probable cause to arrest him. He also sought the suppression of several statements for lack of proper Miranda warnings. Finally, he sought the suppression of his breath-test results on the basis that the test was administered more than two hours subsequent to the last operation of his motor vehicle.
 {¶ 9} The trial court ruled that probable cause to arrest appellant did exist. It also ruled that Miranda warnings were properly given and appellant's statements were voluntary. Finally, the trial court ruled that the breath-test results could not be admitted into evidence without expert testimony. The court also dismissed the prohibited-concentration charge under R.C. 4511.19(A)(3). References to the HGN test were also suppressed.
 {¶ 10} On April 14, 2001, a jury trial was held. At this trial, the state presented the testimony of several witnesses, including that of its expert, Dr. David Cummin. Dr. Cummin's testimony was presented for the purposes of extrapolating appellant's blood-alcohol level at the time of the accident and determining from that blood-alcohol level whether appellant was impaired at that time.
 {¶ 11} Appellant was found guilty of OMVI and driving left of center. Subsequently, appellant was sentenced to one year of incarceration and received a $2,500 fine. The trial court then suspended six months of appellant's incarceration, but imposed five years of probation. The trial court also suspended $1,000 of appellant's fine, ordering appellant to undergo "alcohol treatment." Finally, the trial court fined appellant $50 for the "going left of center" conviction.
 The Appeal I. Appellant's Assignments of Error {¶ 12} Appellant timely filed his notice of appeal and presents the following assignments of error for our review.
 {¶ 13} First Assignment of Error: Did the State of Ohio commit prejudicial error when it continuously referred to 0.10 in its prosecution under O.R.C. § 4511.19(A)(1)?
 {¶ 14} Second Assignment of Error: Did the trial court commit prejudicial error when it failed to grant defendant's request for a mistrial?
 {¶ 15} Third Assignment of Error: Did the trial court commit prejudicial error when it admitted into evidence the BAC Verifier result, state exhibit 2?
 {¶ 16} Fourth Assignment of Error: Did the trial court commit prejudicial error when it allowed Dr. Cummin to express his opinion that defendant was under the influence of alcohol?
 {¶ 17} We will address these assignments of error in a manner more conducive to our analysis.
 I. Appellant's Request for a Mistrial {¶ 18} In his First and Second Assignments of Error, appellant argues that on several occasions during trial, the prosecutor inappropriately referred to the ".10" standard, relevant to prohibited concentration prosecutions under R.C. 4511.19(A)(3). Accordingly, appellant concludes that the trial court should have granted his request for a mistrial.
 {¶ 19} The grant or denial of a motion for a mistrial rests within the sound discretion of the trial court. See State v. Sage (1987),31 Ohio St.3d 173, 182, 510 N.E.2d 343, 349-350; State v. Swain (Jan. 23, 2002), Ross App. No. 01CA2591, unreported. An appellate court will review a trial court's decision to grant or deny a mistrial for an abuse of discretion. See id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. See State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149.
 {¶ 20} When the grounds for a mistrial are based on prosecutorial misconduct, the defendant must show that the alleged misconduct deprived him of a fair trial. See State v. Hawkins (1993), 66 Ohio St.3d 339,348, 612 N.E.2d 1227, 1234; State v. Apanovitch (1987), 33 Ohio St.3d 19,24, 514 N.E.2d 394, 400. "To establish prejudice, an accused must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different." Swain, supra, citing State v. Loza (1994), 71 Ohio St.3d 61,641 N.E.2d 1082, certiorari denied (1995), 514 U.S. 1120,115 S.Ct. 1983.
 {¶ 21} At trial, appellant objected to the prosecutor's reference to the "per se" standard of ".10." First, in his opening statement, the prosecutor stated that the "test result showed that Mr. Brown had a 23.9 of one hundredths of one gram by weight of alcohol per 210 liters of his breath, almost two and a half times the legal limit." (Emphasis added.) Second, upon direct examination of one of the investigating officers, the prosecutor asked, "Can you tell us what just numerically what .239 [sic] on that test represents?" The officer responded, stating, "It's almost two and a half times over the limit." Finally, upon re-direct examination of Dr. Cummin, the prosecutor elicited testimony seeking to correlate appellant's breath-test results with the number of beers he would have needed to consume to test at the level he did. In response, Dr. Cummin stated, "The — I think it's the National Highway Safety and Transportation, whatever, they list for a hundred seventy pound male, four beers, as being .08."
 A. Motion In Limine {¶ 22} Appellant argues that the prosecutor's references to the ".10" standard violated the trial court's prior ruling on a motion inlimine. Appellant argues that we should create a "bright line rule" that when a prosecutor violates a court's ruling on a motion in limine, that the court should automatically declare a mistrial. However, the sole motion in limine found in the record does not raise this issue, and the record is devoid of a journal entry by the trial court instructing the state to not discuss the ".10" standard.
 {¶ 23} Further, the trial court dismissed the prohibited concentration charge against appellant, to which the ".10" standard applies. Thus, we will not address appellant's argument in terms of the prosecutor's alleged violation of the trial court's ruling on a motion inlimine.
 {¶ 24} Solely at issue is whether the prosecutor's direct and elicited references to the ".10" standard constitute misconduct that deprived appellant of a fair trial. See State v. Hawkins,66 Ohio St.3d 339, 612 N.E.2d 1227.
 B. Prosecutorial Misconduct {¶ 25} Appellant is correct in his contention that the ".10" standard in R.C. 4511.19(A)(3) is irrelevant and potentially confusing to a jury faced with deciding a case under R.C. 4511.19(A)(1). R.C.4511.19(A)(3) prohibits operating a motor vehicle with "a concentration of ten-hundredths [.10] of one gram or more but less than seventeen-hundredths [.17] of one gram by weight of alcohol per two hundred ten liters of the person's breath." R.C. 4511.19(A)(3). Under this statute, a conviction is impossible without a chemical test showing defendant operated a motor vehicle with a prohibited concentration (i.e., defendant's blood-alcohol level was above .10). See State v.French (1995), 72 Ohio St.3d 446, 650 N.E.2d 887.
 {¶ 26} However, prosecutions under R.C. 4511.19(A)(1) differ from those under R.C. 4511.19(A)(3). In order to meet its burden in a prosecution under R.C. 4511.19(A)(1), the state must prove beyond a reasonable doubt that the defendant operated a motor vehicle while underthe influence. See R.C. 4511.19(A)(1). The term "under the influence" means that "the defendant consumed some [alcohol], * * * in such a quantity, whether small or great, that it adversely affected and appreciably impaired the defendant's actions, reactions, or mental processes under the circumstances then existing * * *." 4 Ohio Jury Instructions 6, Section 545.25; see, also, State v. Hardy (1971),28 Ohio St.2d 89, 276 N.E.2d 247.
 {¶ 27} Thus, the ".10" legal limit is irrelevant and inapplicable in prosecutions under R.C. 4511.19(A)(1) because the issue generally is whether the defendant's ability to operate a motor vehicle was impaired. See French, supra; City of Newark v. Lucas (1988), 40 Ohio St.3d 100,532 N.E.2d 130.
 {¶ 28} However, when the prosecutor or his witnesses raised the ".10" standard, or referred to appellant testing at more than double the "legal standard," the trial court sustained appellant's objections. Additionally, the trial court instructed the jury to disregard the ".10" standard on two separate occasions. And, the trial court also properly instructed the jury that in order for the state to prevail, it had to show that appellant operated a motor vehicle while under the influence of alcohol, such that his ability to operate the vehicle was appreciably impaired.
 {¶ 29} "A presumption always exists that the jury has followed the instructions given to it by the trial court." Pang v. Minch (1990),53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph four of the syllabus (approving and following State v. Fox (1938), 133 Ohio St. 154,12 N.E.2d 413; Browning v. State (1929), 120 Ohio St. 62, 165 N.E. 566); see, also, State v. Jackson (Feb. 20, 2001), Franklin App. No. 00AP-183, unreported; State v. Pump (June 20, 1994), Ross App. No. 93CA1968, unreported.
 {¶ 30} Based on the circumstances and facts of this case, we find that appellant has not shown that, but for the prosecutor's references to the ".10" standard, the outcome of his trial would have been different. See Swain, supra. Accordingly, since appellant has not demonstrated that he was deprived of a fair trial, we cannot say that the trial court abused its discretion by denying appellant's request for a mistrial. SeeState v. Sage, 31 Ohio St.3d at 182, 510 N.E.2d at 349-350; Swain,supra; State v. Hawkins, 66 Ohio St.3d at 348, 612 N.E.2d at 1234.
 {¶ 31} Therefore, appellant's First and Second Assignments of Error are OVERRULED.
 II. Appellant's Evidentiary Challenges {¶ 32} In his final two assignments of error, appellant argues that the trial court erred: (1) when it admitted into evidence the results of the BAC Datamaster; and, (2) by allowing Dr. Cummin to offer his opinion on whether appellant was under the influence at the time of the motor vehicle accident.
 {¶ 33} The appropriate standard of review, which we must apply in the present situation, is abuse of discretion. See State v. Cartee
(1992), Vinton App. No. 468, unreported, citing Giannelli, Ohio Evidence Manual (1991) 22, Section 403.07; Renfro v. Black (1990), 52 Ohio St.3d 27,556 N.E.2d 150; State v. Rahman (1986), 23 Ohio St.3d 146, 492 N.E.2d 401. Absent a showing that the trial court acted unreasonably, arbitrarily, or unconscionably, we will affirm its ruling. See State v. Apanovitch,33 Ohio St.3d at 22, 514 N.E.2d at 398; Cartee, supra; State v. Cutshaw
(Mar. 6, 1992), Washington App. No. 91CA8, unreported.
 A. BAC Datamaster Test Results {¶ 34} In City of Newark v. Lucas, 40 Ohio St.3d 100,532 N.E.2d 130, paragraph two of the syllabus, the Supreme Court of Ohio held that,
 {¶ 35} "In a criminal prosecution for violation of R.C. 4511.19(A)(1), or of a municipal ordinance relating to operating a motor vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, the results of a properly administered bodily substances test presented with expert testimony may be admitted in evidence despite the fact that the bodily substance was withdrawn more than two hours from the time of the alleged violation." Id. In so holding, the trial court noted that in prosecutions under R.C. 4511.19(A)(1), the results of chemical testing are of "secondary interest" because "[t]he defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section." Id. at 104, 532 N.E.2d at 134.
 {¶ 36} However, in introducing the results, expert testimony is necessary to "relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure representing a percentage of alcohol by weight in the bodily substance, as shown by the results of the chemical test, to the common understanding of what it is to be under the influence of alcohol." Id. at 105,532 N.E.2d at 134. The Lucas Court also noted that the prosecution would also have to establish that the test was properly administered with the remainder of what is now R.C. 4511.19(D) (i.e., that the breath sample was analyzed in accordance with methods approved by the Director of Health). See id.; see, also, State v. French, 72 Ohio St.3d 446,650 N.E.2d 887, paragraph one of the syllabus (stating that, if required, the proper foundation the state must lay for the admissibility of blood-alcohol test results consists of: (1) showing that the bodily substance was withdrawn within two hours; (2) that the substance was analyzed in accordance with methods approved by the Director of Health; and, (3) that the analysis was performed by a qualified individual with a permit from the Director of Health).
 {¶ 37} Thus, the state has a duty to present expert testimony in order to relate the numerical results obtained from the chemical test to the conduct of the defendant and a layperson's understanding of what it means to be under the influence. See id. Additionally, the state must lay a foundation, showing that the sample used in the chemical test was obtained and analyzed in accordance with rules promulgated by the Director of Health. See State v. French, supra.
 {¶ 38} However, in the present case, appellant is challenging the admissibility of the chemical test results based on the reliability and accuracy of the testing device (the BAC Datamaster). Appellant argues that in order for the results of chemical tests administered outside of the "two-hour period" to be admissible, the state must present expert testimony as to the reliability of the testing device.
 {¶ 39} The Supreme Court of Ohio has previously addressed this type of challenge and held that "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." Statev. Vega (1984), 12 Ohio St.3d 185, 190, 465 N.E.2d 1303, 1308; see, also, State v. Eberts (Sept. 26, 2000), Franklin App. No. 99AP-1327, unreported; State v. Hill (May 21, 1993), Gallia App. No. 92CA30, unreported; State v. Lyle (May 8, 1992), Ross App. No. 1733, unreported. Accordingly, since appellant is not permitted to challenge the reliability of the chemical-testing device, we similarly hold that the state is not required to present expert testimony to lay a foundation as to the reliability of the testing device.
 {¶ 40} We do note, however, that a defendant is not precluded from challenging the propriety of his own test results through the presentation of expert testimony. See Vega, supra; Painter Looker, Ohio Driving Under The Influence Law (2001) 235-236, Section T 17.5.
 {¶ 41} Therefore, the trial court did not abuse its discretion by admitting the test results without a foundation as to the reliability of the BAC Datamaster, and appellant's Third Assignment of Error is OVERRULED.
 B. Dr. Cummin's Expert Opinion {¶ 42} As we have already noted, the state is required to submit expert testimony in order to "relate the test results to the defendant and to the time of the alleged violation, as well as to relate the numerical figure [of the test results] * * * to the common understanding of what it is to be under the influence of alcohol." See City of Newarkv. Lucas, 40 Ohio St.3d at 105, 532 N.E.2d at 134.
 {¶ 43} At issue in this assignment of error is the application of two of the Ohio Rules of Evidence: Evid.R. 703 and 705. Evid.R. 703 states that, "The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 703. Evid.R. 705 states that, "The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 44} Appellant is correct in his assertion that Evid.R. 703 and 705 are in pari materia. See 1 Giannelli Snyder, Evidence (2001) 656, Section 703.1. The two rules must be read in conjunction with each other.
 {¶ 45} Under these rules, an expert may review the data underlying his opinion prior to trial and still present his opinion at trial as long as the data relied on was admitted at trial. See McConnell v. BudgetInns (1998), 129 Ohio App.3d 615, 718 N.E.2d 948; White v. Center Mfg.Co. (1998), 126 Ohio App.3d 715, 711 N.E.2d 281.
 {¶ 46} Based on our review of the record, including the transcript of appellant's trial, it would appear that Dr. Cummin did disclose the factual basis for his opinion that appellant was under the influence at the time of the motor vehicle accident. Testimony established the facts needed for Dr. Cummin to extrapolate appellant's blood-alcohol level at the time of the incident and to relate the extrapolated blood-alcohol level to whether appellant's driving ability was impaired.
 {¶ 47} Accordingly, we find that the trial court did not abuse its discretion in allowing Dr. Cummin to express his opinion as to whether appellant was impaired. Thus, appellant's Fourth Assignment of Error is OVERRULED.
 {¶ 48} Therefore, we AFFIRM the judgment of the Hocking County Municipal Court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the HOCKING COUNTY MUNICIPAL COURT to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEENPREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, IT IS TEMPORARILYCONTINUED FOR A PERIOD NOT TO EXCEED SIXTY (60) DAYS UPON THE BAILPREVIOUSLY POSTED. The purpose of the continued stay is to allow appellant to file with the Supreme Court of Ohio an application for stay during the pendency of proceedings in that court.
If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of appellant to file a notice of appeal with the Supreme Court of Ohio within the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., and Harsha, J.: Concur in Judgment Only.